UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEVE ENGLISH                                              CIVIL ACTION

VERSUS                                                        NO. 15-568

WOOD GROUP PSN, INC. AND
W&T OFFSHORE, INC.                                    SECTION "K"(3)

ORDER AND REASONS

Before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure

Rule 12(b)(6) filed by Defendant Wood Group PSN, Inc. ("Wood Group") and Defendant W&T

Offshore, Inc. ("W&T Offshore"), respectively.  (R. Docs. 8 and 10).  Having reviewed the

motions, memoranda, pleadings, and relevant law, the Court GRANTS the motions for the

reasons stated herein.

I.       BACKGROUND

Plaintiff, Steve English, is a former employee of Wood Group and was assigned to work

on an offshore oil platform operated by W&T Offshore.  Plaintiff was employed as an

Electronics Instrumentation Technician on the platform from July 2012 through March 2014.

Compl. ¶¶ 9-10, R. Doc. 1.  One of the Plaintiff's "primary duties was to inspect the platform

VK-823 and complete monthly compliance reports for the Bureau of Safety and Environmental

Enforcement, United States Department of the Interior ('BSEE')." Compl. ¶ 11, R. Doc. 1.

Plaintiff alleges that during his employment, he discovered in October of 2013 that the fire and

gas safety system on VK-823 was not fully functional and that the "A5 downhole valve," due for

an inspection in October of 2013, was not inspected until January of 2014.  Compl. ¶¶ 12-18.

Plaintiff alleges that he reported the A5 downhole valve inspection issue to BSEE in January of

2014 causing an investigation by BSEE on VK-823.  Compl. ¶¶ 19-20. According to Plaintiff,

during the investigation, BSEE performed a "shut-in" test on the fire and gas safety system on VK-823 in February 28, 2014.  Compl. ¶ 24.  Plaintiff also alleges that he reported the non-functional fire and gas safety system on VK-823 to his Wood Group supervisor and that he reported both issues to W&T Offshore and BSEE. Compl. ¶¶ 14, 16, and 21.

Thereafter, Plaintiff alleges that his Wood Group supervisor informed him that "he was no longer welcome on any W&T platform, including the platform VK-823," that he was terminated (or alternatively transferred to a new facility), and that Wood Group has not hired Plaintiff for any available positions since he was removed from VK-823.   Compl. ¶¶ 25-29. In addition, Plaintiff alleges that Wood Group falsely failed to acknowledge that the Plaintiff had been its employee or his status as a former employee to third parties. Compl. ¶¶ 30, 38.

Based on the foregoing, on February 23, 2015, Plaintiff filed suit against Wood Group and W&T Offshore alleging that he was wrongfully terminated from his employment through an act of reprisal by his employers in violation of the Louisiana Whistleblower Act ("LWA"), La. R.S. § 23:967.  Compl. ¶¶ 31-35.  In addition, Plaintiff also asserted claims under Louisiana state law for defamation, intentional infliction of emotional distress, and fault generally.  Compl. ¶¶ 36-46.

Defendant Wood Group PSN, Inc. ("Wood Group"), filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the Plaintiff failed to allege sufficient facts establishing a claim under the LWA, arguing that Plaintiff failed to allege facts relating to an essential element of the LWA, that the employer engaged in an actual violation of state law.  Defendant W&T Offshore, Inc. ("W&T Offshore"), filed their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that the Plaintiff failed to state a claim under the LWA because W&T Offshore is not the Plaintiff's "employer" for purposes of

the LWA in addition to failing to allege any actual violation of state law violated by W&T Offshore.  Specifically, W&T Offshore asserts that, although the LWA lacks a definition for the term "employer," courts routinely apply the definition of "employer" in the Louisiana Employment Discrimination Law ("LEDL") and this definition excludes W&T Offshore as an "employer."  In addition, both Wood Group and W&T Offshore assert that Plaintiff failed to allege sufficient facts to establish his state law claims for negligence, defamation, and intentional infliction of emotional distress.

In response, Plaintiff makes an argument that, as a person employed on an offshore oil platform who performed the majority of his employment duties on the Outer Continental Shelf, the Plaintiff's case is governed by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1333, *et seq*, although this was not alleged in his Complaint. Plaintiff alleges that the OCSLA applies Louisiana state law to this matter as surrogate federal law.  Furthermore, Plaintiff argues that wherever Louisiana law (as "federalized") is not consistent with federal law, the federal law on point is adopted.  Specifically, Plaintiff argues that the "borrowed employee" doctrine from the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950, would supply with the LWA definition of "employer" and would apply to W&T Offshore as a "borrowed employer." In addition, Plaintiff argues that any ambiguity as to whether the LWA concerns only reporting of violations of state law or state *and federal* law should be resolved to include federal law as the LWA under OCSLA becomes surrogate federal law.

As to the remaining causes of action, Plaintiff argues that his claim for mental distress under Louisiana Civil Code article 2315 as "federalized" under OCSLA need not be limited to "physical or psychological injury" and his claim (for negligence or other form of fault) should not be subject to the exclusivity provision of the LHWCA.  The Plaintiff then acknowledges,

however, that under the OCSLA and the LHWCA, his claims related to his "mental distress" injury, whether negligent or intentional, injury would be barred by the LHWCA's exclusivity provision. If, however, the Court finds that one or both of the parties are non-employer third parties under the LHWCA, then the Plaintiff argues that he may maintain a claim against them for acts of fault causing damages, whether negligent or intentional. Plaintiff asserts that the Defendants' ignoring of the Plaintiff's concerns over the safety violations and subsequent termination due to his reporting is extreme and outrageous and is sufficient to state a plausible claim for intentional (or negligent) infliction of emotional distress. Finally, as to the defamation claim, the Plaintiff notes that he alleged that Wood Group failed to acknowledge his employment status to potential employers, which comes in the form of a response to a request from a potential employer to verify that an employment application has in fact worked for an employer listed on the applicant's curriculum vitae. Plaintiff avers that this constitutes a "false statement" that makes Plaintiff appear dishonest and lacking in qualifications for employment, and as such harmed the Plaintiff's reputation. Thus, Plaintiff contends that his claim is plausible on its face.

Ultimately, the Plaintiff argues that the motions to dismiss should be denied, but alternatively requests leave to amend his complaint to cure any deficiency in factual pleading perceived by the Court, and, provided the Court accepts his argument that this is an OCSLA claim, to remove alternate forms of relief not available against OCSLA employers because of the LWHCA provisions.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure sanction dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  However, such motions are generally viewed with disfavor and rarely granted.  *Turner v. Pleasant,* 663

F.3d 770, 775 (5th Cir.2011) (citing *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir.2009)).

To state a claim, under Federal Rule of Civil Procedure 8(a)(2) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)).  The court must accept all well-pleaded factual allegations as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001), *cert. denied sub nom Cloud v. United States,* 122 S.Ct. 2665 (2002).  Although the court must accept as true all well-pleaded factual allegations set forth in the complaint, this tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   As *Twombly* indicates, the complaint must allege enough facts to give rise to a reasonable hope or expectation that discovery will reveal evidence of the foregoing elements of loss causation.  550 U.S. at 556.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. at 697 (quoting *Twombly,* 550 U.S. at 570).  "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly,* 550 U.S. at 555). "A claim is plausible if 'the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Bollinger Shipyards, Inc.,* 775 F.3d 255, 260 (5th Cir.2014) (citing *Iqbal,* 556 U.S. at 678); *see Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011). Plausibility calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly,* 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 at 664. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,* 550 U.S. at 556. "The plausibility standard 'does not give district courts license to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial.' " *Bollinger Shipyards,* 775 F.3d at 260 (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.,* 634 F.3d 787, 803 n. 44 (5th Cir.2011)). The ultimate question to be resolved is "whether [the] complaint was sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011). "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [the plaintiff's] legal argument." *Id.* Nevertheless, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827 (1989).

## III.    DISCUSSION

The Plaintiff has raised an argument for the first time in his Opposition that OCSLA applies to the instant matter. Yet neither the Plaintiff in his Opposition nor the Defendants in their Replies consider the full extent of the ramifications of this argument, as will be discussed below.  Plaintiff contends that an amendment to the Complaint would rectify many of these issues. The Court notes, however, that the Plaintiff has provided scant facts in support of his requests to amend, relying mostly on bare requests for leave to amend, and has not filed a separate motion to amend since this motion has been pending. With this in mind, the Court turns to its analysis of the sufficiency of the Plaintiff's Complaint under Rule 12(b)(6) and Plaintiff's request for leave to amend.

### A.    OCSLA's Application

The Plaintiff argues in his Opposition that his whistleblower claim under section 967 of the Louisiana Whistleblower Statute arises out of acts and occurrences on the platform VK-823 in the Gulf of Mexico on the outer continental shelf, and, therefore, OCSLA, 43 U.S.C. § 1333, *et seq.*, applies to his dispute. Plaintiff simply states that "[w]here the OCSLA is silent, it adopts the rules of the adjacent state." (R. Doc. 13, 3).

In the first instance, the Plaintiff is correct that the OCSLA "asserts exclusive federal question jurisdiction over the OCS by specifically extending '[t]he Constitution and laws of the civil and political jurisdiction of the United States . . . [to the OCS]." *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013).  The Fifth Circuit has recognized that the "jurisdictional grant in OCSLA is broad, covering a wide range of activity occurring beyond the territorial waters of the states." *Id.* (citation and internal quotation marks omitted).  Moreover, because jurisdiction is invested in the district courts by 43 U.S.C. § 1349, "[a] plaintiff does not

need to expressly invoke OCSLA in order for it to apply." *Id.* Thus, although the Plaintiff did

not "expressly invoke OCSLA" in his Complaint, the Act will nonetheless govern if the

requirements for its application are satisfied by the Complaint. *See In re DEEPWATER*

*HORIZON*, 745 F.3d 157, 163 (5th Cir.) cert. denied sub nom. *Louisiana ex rel. Ballay v. BP*

*Exploration & Prod., Inc*., 135 S. Ct. 401, 190 L. Ed. 2d 307 (2014); *Lopez v. Air Logistics,*

*LLC,* No. CIV.A. 01-3407, 2002 WL 356305, at *2 (E.D. La. Mar. 5, 2002).

In order to determine whether a cause of action arises under OCSLA, the Fifth Circuit

applies the following but-for test, asking whether: "(1) the activities that caused the injury

constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the

exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the

operation." *In re DEEPWATER HORIZON*, 745 F.3d at 163; *see* 43 U.S.C. § 1349(b)(1); *Barker,*

713 F.3d at 213. The Fifth Circuit liberally construes the jurisdictional grant in section 1349,

which "precludes an artificial limit based on situs." *In re DEEPWATER HORIZON*, 745 F.3d at

164.

Here, it is clear that, but for Plaintiff's employment on an offshore oil platform engaged

in the exploration and production of minerals on the OCS, [1] the Plaintiff would not have

sustained the injuries alleged in his Complaint. Thus, the Court finds that the injuries alleged

arose out of or are in connection with an "operation" on the OCS involving exploration or

production of minerals. *See* 43 U.S.C. § 1349(b)(1); *Tenn. Gas Pipeline v. Houston Cas. Ins.*

*Co.*, 87 F.3d 150, 154 (5th Cir. 1996)(applying the but-for test in concluding that OCSLA

granted a jurisdictional base for an allision between and a platform); *Recar v. CNG Producing*

*Co.*, 853 F.2d 367, 369 (5th Cir.1988)(finding OCSLA granted jurisdiction where injury

occurred during employment on platform and arose out of the production of minerals on the

---

[1] Plaintiff's Complaint alleges that the Plaintiff worked on a platform, VK-823, in the Gulf of Mexico. Compl. ¶ 10.

OCS); *see also In re DEEPWATER HORIZON*, 745 F.3d at 165-66 ("Federal law governs injuries arising from activity on an OCSLA situs even if the injury occurs elsewhere." (citation omitted)); *cf. Greta v. Surfun Enterprises, LLC*, No. 3:09-CV-2793JLS NLS, 2010 WL 2757290, at *3 (S.D. Cal. July 13, 2010)(finding that plaintiff's wrongful termination and retaliation claims satisfied the location test for maritime torts as the allegations arose from incidents occurring on a maritime vessel). The OCSLA inquiry, however, does not end here: "Federal courts may have jurisdiction to adjudicate a dispute under OCSLA, but they must then turn to the OCSLA choice of law provision to ascertain whether state, federal, or maritime law applies to a particular case." *In re DEEPWATER HORIZON*, 745 F.3d at 164.

Pursuant to OCSLA, "[a]ll law applicable to the outer Continental Shelf is federal law," and all cases "involving events occurring on the Shelf [are] governed by federal law. . . ." *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 480–81, 101 S.Ct. 2870, 2876, 69 L.Ed.2d 784 (1981); *see* 43 U.S.C. § 1333(a)(1).  In terms of choice of law or which body of law should apply, "OCSLA extends federal law to the Outer Continental Shelf and borrows adjacent state law as a gap-filler." *Texaco Exploration & Prod. Inc. v. Engineered Prods. Co.*, 448 F.3d 760, 772 (5th Cir. 2006). The statute provides the following:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations . . . the civil and criminal laws of each adjacent State . . . are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon.

43 U.S.C. § 1333(a)(2)(A).  Three requirements must be met for state law to apply as surrogate federal law under OCSLA:

> (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not

apply of its own force. (3) The state law must not be inconsistent
with Federal law.

*Texaco Exploration*, 448 F.3d at 774 (citing *Union Texas Petroleum Corp. v. PLT Eng'g, Inc*.,

895 F.2d 1043, 1047 (5th Cir. 1990)).  Although Plaintiff fails to discuss the first two

conditions—and Defendants likewise fail to respond—it appears that both conditions are met.

In *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, the en banc Fifth Circuit explained

that "in a tort action . . . the OCSLA situs requirement is met if the tort occurs on a platform or

other OCSLA covered situs as provided in § 1333(a)(2)(A)." 589 F.3d 778, 784 (5th Cir.2009)

(en banc) (citing *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 23

L.Ed.2d 360 (1969)).  Because Plaintiff's claims are delictual in nature[2] and because the offshore

oil platform VK-823 may be considered a "fixed structure" on the OCS under section

1333(a)(2)(A),[3] the controversy arises on an OCSLA situs.  Second, in order for federal maritime

law to apply to an OCSLA tort action, "there must be both a maritime situs and a connection to

traditional maritime activity." *Barker*, 713 F.3d at 215 (citation and internal quotation marks

omitted).  Without undertaking an extensive analysis of this point, it appears that at least the

latter element of the two-pronged maritime situs test is not satisfied; under existing Fifth Circuit

as well as Supreme Court precedent, case law reflects that incidents which occur as a result of

offshore drilling are, for the reasons stated above, generally not maritime in nature. *See Barker*,

713 F.3d at 216-17; *Baudoin v. Houston Exploration Co.,* No. CIV.A. G-06-0512, 2008 WL

---

[2] Plaintiff's whistleblower and related claims are delictual in nature, arise out of his employment with the
Defendants.  *See Langley v. Pinkerton's Inc.,* 220 F.Supp.2d 575, 581 (M.D.La.2002); *Lesikar v. Frymaster, L.L.C.*,
No. CIV.A. 04-0786, 2005 WL 3359178, at *1-3 n.4 (W.D. La. Dec. 8, 2005)(noting that plaintiff's whistle-blower
claims brought under La. R.S. 23:967 were delictual in nature and subject to the general one-year prescriptive period
for such delictual actions); *Murray v. Louisiana*, No. CIV.A. 08-254-RET-SC, 2011 WL 703653, at *6 (M.D. La.
Feb. 2, 2011); *Nolan v. Jefferson Parish Hosp. Service Dist. No.,* 790 So.2d 725, 733 (La.App. 5 Cir.2001); *Alcorn
v. City of Baton Rouge,* 898 So.2d 385, 388 (La.App. 1 Cir.2004); *King v. Phelps Dunbar, L.L.P.,* 743 So.2d 181,
187 (La.1999); Louisiana Civil Code article 3492.
[3]The Court assumes the facts alleged are true, for purposes of this analysis, and that where the Complaint refers to
"the platform VK-823" situated in the "Gulf of Mexico," that it is a fixed platform on the outer continental shelf off
the coast of Louisiana, the adjacent state.

4791480, at *3 (S.D. Tex. Oct. 30, 2008)(finding that fixed platform on OCS was an OCSLA situs and maritime law did not apply). Thus, under the facts of this case, federal maritime law would not apply of its own force.

Having satisfied the first two conditions, and based on the location of the activity upon which the Plaintiff's claims are based, the Eastern District of Louisiana would be the proper venue for the action and the Louisiana law would apply as federal surrogate law if not inconsistent with federal law. *See* La. R.S. 23:967(B).

### 1.    OCSLA's application of Louisiana State Law

Plaintiff's argument raises another question in light of OCSLA's application: whether Louisiana law is inconsistent with federal law on point. Plaintiff argues that Louisiana state law is "inconsistent" with federal law as to the definition of "employer" under the LWA, and Plaintiff also argues that ambiguity in the statutory language of the LWA should be interpreted differently in light of the LWA's status as federal surrogate law.  Plaintiff asserts that the Louisiana Whistleblower Act's definition of "employer" is not consistent with federal law, which employs other "inconsistent federal jurisprudential definitions" of the term. Plaintiff cites, as an example, the definition of  the definition of "employer" under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950.  Courts have jurisprudentially adopted the borrowed employee doctrine in the context of the LHWCA for the purposes of tort immunity entitling a worker to compensation benefits from a "borrowed employer" if not protected by his nominal employer.  *See Gaudet v. Exxon Corp.,* 562 F.2d 351, 354-356 (5th Cir. 1977).  Thus, Plaintiff argues that "because the federal definition of 'employer' used by the OCSLA incorporates borrowed employee doctrine, inconsistent state statutes and jurisprudence . . . are not applicable to the outer continental shelf in this matter." (R. Doc. 13, 5). Plaintiff also

asserts that, where the LWA states that it includes reporting of "any violation of law" or "violation of law," that, as surrogate federal law, this should be interpreted to include both violations of state *and* federal law.  *See* La. R.S. 23:967(A)(1)-(3).

Plaintiff's arguments rely on flawed assumptions. Plaintiff assumes that any federal definition of "employer" not in accord with the LWA's jurisprudentially adopted definition must therefore be "inconsistent." Plaintiff also assumes that, because the LWA uses the phrases "any violation of law" and "violation of law" in addition to "violation of state law," that the phrase may be interpreted to include violations of law other than state law as the statute has been "federalized" under OCSLA, regardless of how Louisiana courts have interpreted the phrase.

It has been recognized by the Supreme Court that unless a federal law is applicable to the particular case, the state law is not inconsistent with it.  In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court rejected the Fifth Circuit's attempt to apply the doctrine of laches as a matter of federal common law instead of Louisiana's prescriptive statute in the context of an accident arising on a fixed platform on the Outer Continental Shelf, stating:

> As we pointed out in *Rodrigue,* Congress recognized that The Federal Code was never designed to be a complete body of law in and of itself and thus that a comprehensive body of state law was needed. Congress also recognized that the special relationship between the men working on these artificial islands and the adjacent shore to which they commute favored application of state law with which these men and their attorneys would be familiar. If Congress' goal was to provide a comprehensive and familiar body of law, it would defeat that goal to apply only certain aspects of a state personal injury remedy in federal court. A state time limitation upon a remedy is coordinated with the substance of a remedy and is no less applicable under [OCSLA].

*Huson,* 404 U.S. at 104–105, 92 S.Ct. at 353-54 (citations omitted).  The Supreme Court addressed an analogous question in *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486, 101

S. Ct. 2870, 2879, 69 L. Ed. 2d 784 (1981), noting that it must consider "the content of both potentially applicable federal and state law" in determining whether state law is "inconsistent" with federal law but remanded the case to the Texas Court of Civil Appeals for a determination of the content of the Louisiana state law.  The Fifth Circuit has discussed the issue of state law's inconsistency with federal law in *Fontenot v. Dual Drilling Co.*, 179 F.3d 969 (5th Cir. 1999).  At issue in *Fontenot* was whether Louisiana law was inconsistent with federal law where the LHWCA set out a "loss allocation scheme" based on joint and several liability whereas Louisiana law provided for a comparative negligence scheme.  *Id.* at 972.  The Fifth Circuit found that Louisiana law provided a cause of action for third-party liability where the LHWCA was silent and, because Louisiana law provided the scope of third-party liability (as well as defenses to it), Louisiana law also governed the question of whether a proportionate-liability rule applies. *Id.* at 976 ("More importantly, however, the proportionate-liability scheme imposed by Louisiana law cannot be *inconsistent* with federal law because there would be no third-party cause of action in this case had Louisiana not provided one.").

Here, the LWA has no direct counterpart under federal law—it is for that very reason the LWA is employed under OCSLA as a "gap-filler" and is "surrogate federal law."  *See Bartholomew v. CNG Producing Co.,* 862 F.2d 555, 557 (5th Cir. 1989)(noting that if no federal law on the issue of apportionment of attorney's fees existed, then Louisiana law would govern as surrogate federal law).

In light of the existing Supreme Court precedent and Congress' evident purpose in rejecting national uniformity but providing a degree of "local" uniformity in OCSLA,[4] it is this

---

[4] *See Gulf Offshore*, 453 U.S. at 489 (Blackmun, J., concurring in part and concurring in result)("As I understand OCSLA, the purpose of incorporating state law was to permit actions arising on these federal lands to be determined by rules essentially the same as those applicable to actions arising on the bordering state lands. Congress apparently

Court's opinion that OCSLA adopts the state law cause of action and defenses thereto in its entirety. *See Olsen v. Shell Oil Co.,* 708 F.2d 976, 980 (5th Cir. 1983) ("The implication of *Rodrigue* and *Huson* is that whenever an action is based on "surrogate" Louisiana law . . . Louisiana law provides all aspects of the remedy."); *Gulf Offshore Co., a Div. of the Pool Co. v. Mobil Oil Corp.,* 628 S.W.2d 171, 174 (Tex. App. 1982), *writ refused NRE.* Thus, where no other federal law is applicable in this case and where Louisiana law provides the cause of action, the definitions employed by the LWA or those by the Louisiana courts interpreting the LWA are not inconsistent with federal law. Accordingly, the Louisiana jurisprudential definition of "employer" and the Louisiana jurisprudence interpreting the LWA remain relevant to the LWA as federal surrogate law.

The Court notes that, in this case, where the matter is governed by OCSLA, Louisiana law applies as surrogate federal law, and Louisiana law is not inconsistent with federal law, the Plaintiff is left with an unsatisfactory remedy.  Upon first glance, it might appear that OCSLA saves the Plaintiff's LWA claim; arguably, under Louisiana jurisprudence, the LWA would not apply to the facts of his case but for OCSLA, as at least one Louisiana appellate court has found that "violations" occurring outside Louisiana cannot form the basis of an LWA claim.  *See Mendonca v. Tidewater, Inc*., 03-1015 (La. App. 4 Cir. 12/17/03); 862 So. 2d 505.  Consistent with that view, Louisiana courts are in agreement that a plaintiff must prove an actual violation of *state* law to succeed on an LWA claim, as will be discussed *infra*. Under the facts of this particular case, it is difficult to imagine how a whistleblower may succeed in demonstrating his reporting of violations of Louisiana state law that occurred beyond Louisiana's territorial jurisdiction on the outer continental shelf.  Understandably, the Plaintiff argues that the LWA

---

intended to provide a kind of local uniformity of result, regardless of whether the action arose on shelf lands or on neighboring state lands.").

would have "limited effect" if not interpreted to include violations of federal law in addition to state law. However, the Court notes that the issue of the OCSLA's effectiveness in providing a remedy in this particular case illustrates the need for legislative action.

The Court takes judicial notice (as requested by the Plaintiff) of the fact that Congress has considered but not passed any legislation specifically providing oil platform workers whistleblower protection. *See* Offshore Oil and Gas Worker Whistleblower Protection Act, H.R. 1659, 113th Cong. (1st. Sess. 2013). Although the Seaman's Protection Act, 46 U.S.C. §2114, provides whistleblower protection to seamen and the Occupational Safety and Health Act of 1970 (OSHA), 84 Stat. 1590, as amended, 29 U.S.C. § 660, provides whistleblower protection to other employees,[5] no similar protection exists for offshore oil platform workers. Therefore, the Plaintiff is entirely dependent on the unique application of the LWA (via OCSLA) for his remedy[6] as opposed to a federal cause of action providing whistleblower protection.

---

[5] It appears that OSHA regulations do not provide any avenue for relief for the Plaintiff or any person similarly employed on an offshore oil platform. In *Mott v. ODECO,* 577 F.3d 273, 278 n. 6 (5th Cir.1978), the Fifth Circuit expressly declined to decide whether OSHA regulations applied to offshore platforms. The Fifth Circuit in *Donavan v. Texaco, Inc.,* 720 F.2d 825, 826 (5th Cir. 1983), determined that OSHA regulations were not applicable to seamen on vessel. Since that time, district courts, as well as OSHA itself, have taken the position that OSHA regulations do not apply to work that is performed from an offshore platform. *See Petri v. Kestrel Oil & Gas Properties L.P.*, No. CIV.A. H-09-3994, 2012 WL 2153498, at *2 and n.1 (S.D. Tex. Jan. 4, 2012). Instead, the Coast Guard has regulatory authority over rigs and oil production on the OCS. *Id.* (citing  43 U.S.C. § 1333(d)(1)). The Seaman's Protection Act was passed in response to *Donavan*, and provides seamen protection from employment reprisal for providing information of dangerous situations to the Coast Guard. *See* 46 U.S.C. § 2114; *Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 444 (7th Cir. 2006); *Garrie v. James L. Gray, Inc.,* 912 F.2d 808, 812 (5th Cir. 1990)("Section 2114 is narrowly tailored to protect only the seaman who 'in good faith has reported or is about to report to the Coast Guard…'"). Unfortunately for the Plaintiff, it appears that the Act may only apply to a "seaman" and not an employee on an offshore oil platform. *See Becker v. Tidewater, Inc.,* 335 F.3d 376, 391 (5th Cir. 2003), *as revised* (July 24, 2003)("[P]laintiff's work on the Vastar platform does not establish seaman status. Fixed platforms are not vessels, and workers injured on them are covered under the LHWCA, not the Jones Act."); *Wilcox v. Welders*, 969 F. Supp. 2d 668, 674 (E.D. La. 2013*) aff'd sub nom. Wilcox v. Wild Well Control, Inc.,* No. 13-31281, 2015 WL 4509566 (5th Cir. July 24, 2015)(discussing Jones Act seaman status generally); *see also Adleigh v. Schlumberger*, 832 F.2d 933, 934 (5th Cir. 1987).

[6] The Court notes that the Plaintiff has not cited, nor can the Court find, any case which specifically discusses the application of OCSLA (and its effect) in light of the LWA. In this Circuit, three cases involve claims made by plaintiffs working as seamen or on offshore platforms under the Louisiana Whistleblower statute and yet none discuss the application of OCSLA.  *See Barber v. marine Drilling Mgmt., Inc.,* No. Civ. A. 01-1986, 2002 WL 237848 (E.D.La. Feb. 15, 2002)(Porteous, J.); *Myers v. BP America, Inc.*, Civ. No. 6:08-0168, 2010 WL 3878920 (W.D.La. Sept. 28, 2010)(Hill, J.); *Diaz v. Superior Energy Services, LLC,* Civ. No. 07-2805, 2008 WL 3077071 (E.D.La. Aug. 4, 2008)(Wilkinson, J.); *see also In re Oil Spill by Oil Rig "DEEPWATER HORIZON" in Gulf of*

While the Court is sympathetic to Plaintiff's plight, the Court is constrained to apply only the law applicable in this case.  The Fifth Circuit noted the importance of following OCSLA's statutory directive, quoting the Supreme Court's statement in *Huson*:

> Congress specifically rejected national uniformity and specifically provided for the application of state remedies which demand state, not federal, statutes of limitation. Thus, Congress made clear provision for filling in the "gaps" in federal law; it did not intend that federal courts fill in those "gaps" themselves by creating new federal common law.

*Fontenot,* 179 F.3d at 977 (citing *Huson,* 404 U.S. at 104–105, 92 S.Ct. at 354).  Thus, the Court now turns to Plaintiff's request for leave to amend his Complaint in the event the Court found his OCSLA argument meritorious.

## 2.    Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. Proc. 15(a)(2).  The Fifth Circuit has noted that "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir.2005) (citation and internal quotation marks omitted).

In considering whether to grant or deny a motion to amend, the court may exercise its discretion in considering a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party … , and futility of the amendment." *Id.* (citation omitted). Though leave to amend is not automatic under Rule 15(a)(2), the court must possess

---

*Mexico, on Apr. 20, 2010*, No. 12-2019, 2012 WL 4753418, at *4 (E.D. La. Oct. 4, 2012)(discussing pro se Plaintiff's "whistleblower" claim under the presumption that Louisiana's Whistleblower statute would apply); *Walter v. BP Am., Inc.*, No. CIV.A. 12-177, 2014 WL 1796676, at *1 (E.D. La. May 6, 2014) aff'd, 593 F. App'x 405 (5th Cir. 2015)(employee contractor for BP working onshore brought Louisiana whistleblower claim).

substantial reason supporting a denial of leave to amend. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)(citations omitted).

It is well within the district court's discretion to deny a motion to amend if it is futile. *See Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,* 195 F.3d 765, 770 (5th Cir.1999). The Fifth Circuit has defined "futility" to mean that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir.2000). To determine futility, courts are to "apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. (internal citations and quotation marks omitted).

"Nevertheless, a party must 'expressly request' leave to amend." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796 (5th Cir. 2014)(citing *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 387 (5th Cir.2003)). Although this request need not be contained in a formal motion, "[a] bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Willard*, 336 F.3d at 387 (quotations and citation omitted).

In several places in his Opposition, Plaintiff's request for leave to amend amounts to nothing more than a bare request, not a motion.  *See* R. Doc. 13; *U.S. ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 n.3 (5th Cir. 2008)(Construing statements requesting for leave to amend if the court found allegations insufficient in memoranda as bare statements unaccompanied by a proposed amendment and not a proper motion). However, Plaintiff has offered proposed amendments as to the LWA claim and to remove the claims potentially barred by the LHWCA in light of the OCSLA argument.  The Court will evaluate the sufficiency of the Complaint in light

of its finding that OCSLA applies and whether amendment to the Plaintiff's claims, brought under OCSLA, would be futile based on the Plaintiff's requests. *See Rio Grande Royalty Co. v. Energy Transfer Partners,* 620 F.3d 465, 468 (5th Cir.2010) ("The trial court acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss.").

**B.      LWA**

Because the Court has found that Louisiana law is not inconsistent with federal law, the Court will address Defendants' argument that Plaintiff has failed to allege an actual violation of state law and W&T Offshore's argument that it is not the Plaintiff's "employer" for purposes of the LWA.

The LWA does not define the term "employer." *Ray v. City of Bossier City*, 37,708 (La. App. 2 Cir. 10/24/03), 859 So. 2d 264, 272 *writ denied,* 2003-3254 (La. 2/13/04), 867 So. 2d 697 *and writ denied,* 2003-3214 (La. 2/13/04), 867 So. 2d 697.  Courts have turned to the definition of "employer" in the Louisiana Employment Discrimination Law (LEDL), La. R.S. 23:302(2), located under the same title, to supply a definition of "employer" in the context of a LWA claim; the definition requires an employer be one who compensates the employee rather than one who has the right to control the employee. *See Seal v. Gateway Companies, Inc.*, No. 01-1322, 2002 WL 10456, at *5 (E.D.La. Jan. 3, 2002).[7]  "Most federal courts applying Louisiana law *"*have consistently held that the definition of 'employer' for purposes of the Louisiana Employment Discrimination Law contained in La. R.S. 23:302(2) is applicable to Whistleblower claims under

---

[7] La. Rev. Stat. Ann. 23:302 (2): "Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment.

La. R.S. 23:967."[8]  Notably, the first court to consider the issue—the federal district court in
*Dronet*—concluded that the LEDL definition of "employer" applied to the LWA claim in light of
the fact that the Louisiana Civil Code instructs that "[l]aws on the same subject matter be
interpreted in reference to each other." 2000 WL 1720547, at *2 (quoting La. Civ. Code art. 13).
However, one federal district court declined to apply the LEDL definition of "employer" to
LWA claims. *See Knighten v. State Fair of La.,* 2006 WL 725678, at *1 (W.D.La. March 21,
2006)(Hicks, J.); *Upshaw v. Bd. of Supervisors of S. Univ. & Agr. Coll.,* No. CIV.A. 10-184-JJB,
2011 WL 2970950, at *4 (M.D. La. July 19, 2011)(Brady, J.).

The Louisiana Supreme Court has not ruled on the issue of whether the LEDL law
definition of "employer" is the correct definition to be applied to the whistleblower statute, and
Louisiana appellate courts split on the issue.  *See Ray v. City of Bossier City,* 37,708 (La. App. 2
Cir. 10/24/03), 859 So. 2d 264, 272 *writ denied*, 2003-3254 (La. 2/13/04), 867 So. 2d 697, *and
writ denied,* 2003-3214 (La. 2/13/04), 867 So. 2d 697; *Rider v. Ambeau,* 07–681 (La.App. 1 Cir.
12/21/07), 2007 WL 4465644; *but see Hunter v. Rapides Parish Coliseum Auth.,* 2014-784 (La.
App. 3 Cir. 2/4/15), 158 So. 3d 173, 176, *reh'g denied* (Mar. 11, 2015), *writ denied,* 2015-0737
(La. 6/1/15).  In *Hunter*, the Louisiana Third Circuit Court of Appeal noted that "[a]t least one
Louisiana federal court has refused to apply the twenty or more employees requirement to a
whistleblower claim," referring to *Knighton*. 158 So.3d at 177.  However, the issues in both the
*Hunter* and *Knighton* courts turned on the application of the "twenty or more employees

---

[8] *Myers v. BP Am., Inc.,* No. CIV.A.6:08-0168, 2010 WL 3878920, at *3 (W.D. La. Sept. 28, 2010); *see also
Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc*., No. CIV.A. 10-584, 2011 WL 6046984, at *2 (M.D.
La. Dec. 6, 2011)(Duval, J.) ("However, courts have consistently applied the definition of 'employer' set out in
La.Rev.Stat. § 23:302, Louisiana's general employment discrimination statute."); *Landon v. Padgett*, No. CIV.A. 13-
261-SCR, 2013 WL 6002448, at *2-3 (M.D.La. Nov. 12, 2013); *Johnson v. Hosp. Corp. of Am*., 767 F. Supp. 2d
678, 691 (W.D. La. 2011); *Langley v. Pinkerton's, Inc.,* 220 F.Supp.2d 575, 580 (M.D.La.2002); *Jackson v. Xavier
Univ. of Louisiana,* 2002 WL 1482756 (E.D.La.2002); *Johnson v. Integrated Health Servs., Inc.,* No. 01-2075, 2002
WL 31246762, at *2 (E.D.La. Oct. 2, 2002); *Jones v. JCC Holding Co.,* 2001 WL 537001, *3 (E.D.La.2001); *Seal v.
Gateway Companies, Inc.,* 2002 WL 10456, *5 (E.D.La.2002); *Dronet v. LaFarge Corp.*, No. CIV.A.00-2656, 2000
WL 1720547, at *2 (E.D. La. Nov. 17, 2000).

requirement" in the LEDL definition of "employer."  By contrast, the issue at hand is whether

the employer, for purposes of the LWA, must be a payroll employer as the LEDL requires.  The

Court finds the reasoning of *Dronet* and the subsequent federal courts and Louisiana appellate

courts following that decision to be persuasive and finds that the "employer" must be a payroll

employer for purposes of LWA liability.  In this case, because W&T Offshore was not alleged to

be a payroll employer, the Plaintiff's Complaint fails to allege facts giving rise to a plausible

claim against W&T Offshore on its face and the claim must be dismissed.

   The Louisiana law as to Plaintiff's second argument is clearer and presents a more

decisive issue for Plaintiff's LWA claim against both Defendants. The Plaintiff argues that,

under the Louisiana whistleblower statute, he need not allege that the employer was committing

an *actual violation* of *state* law.  First, Plaintiff notes that the statute only requires a violation of

"state law" as to the first section, (A)(1), but that the following two sections require "any

violation of law" or "violation of law." *See* La. R.S. 23:967(A)(1)-(3). Plaintiff suggests that, as

applied via OCSLA, this "federalized" statute applying to "any violation of law" or a "violation

of law" could be interpreted to include violations of *federal* law in addition to state law.

   Every Louisiana appellate court to address the issue has held that a plaintiff must prove

an *actual* violation of *state* law to prevail on a whistleblower claim.[9] The federal courts have

arrived at the same conclusion.[10] Louisiana courts have determined that it is *not* sufficient "that

---

[9] *Beard v. Seacoast Electronics, Inc.*, 2006-1244 (La. App. 4 Cir. 1/24/07); 951 So.2d 1168, 1170; *Accardo v. Louisiana Health Servs. & Indem. Co.,* 2005-2377 (La. App. 1 Cir. 6/21/06), 943 So. 2d 381, 386 (La. Ct. App. 2006); *Hale v. Touro Infirmary,* 04-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 120, *writ denied*, 05-0103 (La. 3/24/05), 896 So.2d 1036; *Puig v. Greater New Orleans Expressway Comm'n,* 2000–924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, *writ denied,* 2000–3531 (La.3/9/01), 786 So.2d 731; *Price v. B & B Transp. Servs., Inc.*, 2007 WL 1300932, at *2 and n.1,  2006-1482 (La. App. 1 Cir. 5/4/07); *Mabry v. Andrus*, 45,135 (La. App. 2 Cir. 4/14/10), 34 So. 3d 1075, 1081 *writ denied,* 2010-1368 (La. 9/24/10), 45 So. 3d 1079; *Fondren v. Greater New Orleans Expressway Comm'n,* 871 So.2d 688, 691 (La. App. 5th Cir. 2004).
[10] *See Diaz v. Superior Energy Services LLC,* 341 Fed.Appx. 26 (5th Cir.2009); *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt.*, 816 F. Supp. 2d 297, 313-14 (M.D. La. 2011) *aff'd,* 498 F. App'x 448 (5th Cir. 2012);

the employee reasonably believes [the employer's action] is a violation of law.... [The statute] requires an employee to *prove an actual violation of state law* in order to prevail on the merits of the case." *Accardo,* 943 So.2d at 386–87 (quotation and citation omitted) (emphasis added). As the Louisiana First Circuit Court of Appeals explained:

> [W]e note that the inclusion of the requirement of good faith in La. R.S. 23:967 creates an appearance of ambiguity as to whether an actual violation of law must be established. However, based on the legislative history of the statute, which deleted the phrase "reasonably believes is in violation of law" and substituted the phrase "that is in violation of state law", it is appears that the legislature intended the  requirement of a violation of state law. Although we have grave concerns regarding the chilling effect that this requirement will have on the reporting by an employee of illegal acts, we are compelled to conclude that the Louisiana Whistleblower Statute, La. R.S. 23:967, requires an employee to prove an actual violation of state law in order to prevail on the merits of the case.

*Accardo,* 943 So. 2d at 386-87. Therefore, under La R.S. § 23:967 a plaintiff must prove an actual violation of state law, not just a good faith belief that a law was broken. *Corley v. Louisiana ex rel. Div. of Admin., Office of Risk Mgmt.,* 816 F.Supp.2d 297, 313–14 (M.D.La.2011); *Scott v. Turner Indus. Group, LLC,* CIV.A. 09–872, 2011 WL 5023840 (M.D.La. Oct. 19, 2011).

In his Complaint, Plaintiff does not allege any violation of Louisiana law (much less any other law) in particular. By the plain letter of the law, the Plaintiff has failed to allege sufficient facts to give rise to a claim that is plausible on its face because the Plaintiff failed to allege and

---

*LaRavia v. Cerise,* 462 F. App'x 459, 464 (5th Cir. 2012); *Stevenson v. Williamson,* 547 F.Supp.2d 544 (M.D.La.2008), *aff'd,* 324 Fed.Appx. 422 (5th Cir.2009);
*Delouise v. Iberville Parish Sch. Bd.,* 8 F. Supp. 3d 789, 802 (M.D. La. 2014);
*Goulas v. LaGreca,* 945 F.Supp.2d 693, 702 (E.D.La.2013); *Lackey v. SDT Waste & Debris Servs., LLC*, No. CIV.A. 11-1087, 2014 WL 3866465, at *6 (E.D. La. Aug. 6, 2014); *Crowe v. Se. Cmty. Health Sys.,* No. 10–2838, 2014 WL 1456352, at *9 (E.D.La. Apr. 15, 2014); *Crocken-Waugh v. ITT Educ. Servs., Inc.,* No. CIV.A. 12-505, 2013 WL 486690, at *3 (E.D. La. Feb. 6, 2013) ("[W]ithout guidance from the Louisiana Supreme Court, to extend the application of this statute to violations of federal law would create new rights for plaintiffs without express statutory authority or a clear directive[, and . . . . the] Plaintiff may only assert claims under La.Rev.Stat. § 23:967(A)(1) and (3) that arise from underlying violations of state law.")*; Sprull v. City of Baton Rouge,* No. CIV.A. 09-689-BAJ-CN, 2012 WL 2426793, at *2 (M.D. La. June 26, 2012); *Ganheart v. Xavier Univ. of Louisiana*, No. CIV.A.07-9703, 2009 WL 24227, at *9 (E.D. La. Jan. 2, 2009) *aff'd,* 347 F. App'x 25 (5th Cir. 2009); *Barber v. Marine Drilling Mgmt., Inc.,* No. CIV.A. 01-1986, 2002 WL 237848, at *10 (E.D. La. Feb. 15, 2002).

actual violation of state law against either Defendant. Plaintiff states in his Opposition that, upon belief, W&T Offshore was cited for a violation related to the Plaintiff's whistleblowing activity and requests to amend in light of that belief. However, as the Court has found W&T Offshore exempt from the LWA's scope, this amendment would not cure the Complaint's failure to state a claim and would be futile.

Plaintiff also requests leave to amend and lists citations to Louisiana state statutes that he alleges were violated by the Defendants in his Opposition as examples of potential claims. *See* R. Doc. 13, 9 (citing La. R.S. 14:126.1; La. R.S. 23:13; La. R.S. 30:17; La. R.S. 401578.6; and La. R.S. 40:1646(C). The Plaintiff presents no facts supporting his request to amend under these statutes. It appears, however, that none of the proposed statutes would meet the 12(b)(6) standard based on the facts alleged in the Complaint and thus amendment would be futile.

The Court agrees with the contentions of Wood Group and W&T Offshore contend that both La R.S. 40:1578.6 and 40:1646(C) are inapplicable as these statutes only apply to movables and conduct regulated by the "State Fire Marshal," and the VK-823 platform is not subject to regulation by the Louisiana State Fire Marshal.

As to Louisiana Revised Statutes 14:126.1, Defendant W&T contends that this statute is inapplicable as W&T Offshore does not file reports with any Louisiana state entity in connection with the operation of the VK-823 platform nor has Plaintiff alleged in his Complaint that W&T makes such reports. Although Plaintiff alleged that W&T Offshore made false reports to the United States Bureau of Safety and Environment Enforcement (BSEE), this is a federal entity and not covered by this statute. Defendant Wood Group argues similarly, that Plaintiff has not alleged that it filed any false report in his Complaint nor could he make such an allegation against it. Defendants offer similar arguments as to the reporting requirements listed in Louisiana

Revised Statutes 30:17.  The Court finds La. R.S. § 14:126.1 inapplicable as it concerns false reports "concerning the commission of a crime," which is not at issue in this matter, and La. R.S. §30:17 inapplicable as the article is limited to false reports made to the Louisiana Department of Conservation, which W&T Offshore and Wood Group do not make.

As to Louisiana Revised Statutes 23:13, Wood Group argues that this statute is inapplicable because Plaintiff did not work at a location owned and operated by Wood Group. Rather, the platform was owned by W&T Offshore.  Moreover, Wood Group asserts that it had no knowledge of Plaintiff's specific day-to-day work assignments, working conditions, or manner of performance and consequently could not apply to Wood Group.  W&T Offshore argues that the statute does not apply as it was not Plaintiff's employer and that Plaintiff's Complaint is void of any allegations demonstrating that the alleged late inspection of the A5 downhole valve and functionality of the fire and gas system rendered his employment unsafe. Furthermore, W&T Offshore asserts that Plaintiff does not allege that he reported any unsafe working condition.

Regardless of whether the statute supplies a duty to either Defendant, the Court is at a loss in understanding how a statute that provides a private cause of action (and duty on the part of employers under a negligence analysis) would have been the subject of the Plaintiff's whistleblowing activities in making reports to the BSEE. *See Rome v. Traylor*, 620 So. 2d 1163, 1164 (La. 1993)(the duty to provide safe working conditions had been delegated to employees in that case).  The Court finds this statute wholly inapplicable in this case and not a proper basis for the Plaintiff's LWA claim.

Finally, Plaintiff asserts that he may allege an additional cause of action under the Louisiana Environmental Whistleblower Act, La. R.S. 30:3027.  The Court finds that

amendment to state this cause of action would be futile.  The statute provides whistleblower

protection to those individuals who disclose or threaten to disclose "the violation of a specific

*environmental* law, rule, or regulation committed by their employer."  *See Barber v. Marine*

*Drilling Mgmt., Inc.*, No. CIV.A. 01-1986, 2002 WL 237848, at *10-11 (E.D. La. Feb. 15,

2002); *Overton v. Shell Oil Co.,* 2005-1001 (La. App. 4 Cir. 7/19/06), 937 So. 2d 404, 412 (La.

Ct. App.) *writ denied*, 2006-2093 (La. 11/3/06), 940 So. 2d 674 ("As of that time, Mr. Overton

was a whistleblower because he disclosed 'an activity, policy, practice of the employer ... that the

employee reasonably' believed was 'in violation of an environmental law, rule, or regulation.'").

While the Louisiana Supreme Court has not ruled on this point, current appellate court precedent

holds that a plaintiff cannot recover under this provision where the reporting activity giving rise

to the whistleblower claim was part of the plaintiff's normal job responsibilities:

> While we find no Louisiana case directly on point, we further hold that the Louisiana
> Environmental Whistleblower Statute does not afford protection to an employee who
> generates reports regarding environmental issues when reporting environmental issues,
> concerns, and potential violations is a part of one's normal job responsibilities, and part
> and parcel of what one is hired and/or required to do.

*Stone v. Entergy Servs., Inc.,* 2008-0651 (La. App. 4 Cir. 2/4/09), 9 So. 3d 193, 200 (La. Ct.

App.) *writ denied,* 2009-0511 (La. 4/17/09), 6 So. 3d 797.  In his Complaint, Plaintiff quite

explicitly states that "one of plaintiff's primary duties was to inspect the platform VK-823 and

complete monthly compliance reports for the Bureau of Safety and Environmental Enforcement,

United States Department of Interior."  Compl. ¶11.  Because Plaintiff's whistleblowing

reporting activity was, in fact, one of his "primary duties," the Court finds that the Plaintiff

would be unable to state a claim plausible on its face under the 12(b)(6) standard and amendment

would be futile.  The Court also notes that the regulation or rule violated under this statute must

be environmental; rules and regulations pertaining to safety may not be sufficient to state a

claim. *See Chiro v. Harmony Corp.,* 99–0453 (La.App. 1 Cir. 11/5/99), 745 So.2d 1198, 1200,

*writ denied,* 99–3346 (La.1/28/00), 753 So.2d 840.

### C.     Negligence and Intentional Fault

Plaintiff broadly alleges a cause of action for "fault" under article 2315 of the Louisiana

Civil Code.  Plaintiff states that this allegation subsumes both negligent and intentional fault in

causing the resulting "mental distress" injury.  Plaintiff suggests that this article is inclusive of

"negligence," which is particularly described in article 2316 of the Louisiana Civil Code, but not

limited to a negligence action.  Plaintiff alleges no particular elements of a cause of action for

either negligence or some other variety of intentional tort.  Separately, Plaintiff alleges a cause of

action for intentional infliction of emotional distress.

The Plaintiff has nevertheless conceded in his Opposition that, consistent with his

position that the OCSLA applies and both Defendants are "employers" under the LHWCA, the

LHWCA's exclusivity provision would not allow any claim for intentional infliction of

emotional distress or any negligent injury.  The LHWCA is the workers' compensation scheme

applicable to an offshore worker for a plaintiff who sustains a work related injury on the Outer

Continental Shelf.  The Court agrees that the LHWCA would thus bar any such action against

the Defendants, provided that both Defendants are considered "employers" for purposes of the

LHWCA. *See* 43 U.S.C. §§ 904(a), 905(a). The tort immunity under the LHWCA has been

expanded to include "borrowing employers" under the borrowed employee doctrine. *See Total*

*Marine Services, Inc. v. Director, Office of Worker's Compensation Programs*, 87 F.3d 774, 777

(5th Cir. 1996) (citing Hebron v. Union Oil Co., 634 F.2d 245 (5th Cir.1981)); *Gaudet v. Exxon*

*Corp.*, 562 F.2d 351 (5th Cir.1977); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1243–44 (5th

Cir.1988).  If the Plaintiff is W&T Offshore's borrowed employee, W&T Offshore will thus be vested with § 905(a) tort immunity.

The Fifth Circuit examines a number of factors in determining whether the borrowed employee doctrine applies.[11]  In this case, Plaintiff directly reported to his W&T Offshore supervisors, indicating that W&T Offshore had "supervision and control" of the Plaintiff employee.  *See Gaudet,* 562 F.2d at 355.  The Court finds the fact that W&T Offshore had such control over the Plaintiff to be determinative and that the Plaintiff was its borrowed employee. *See Kindred,* 805 F. Supp. 2d at 281(citations omitted) ("Although no single factor, or combination of factors, is determinative, the United States Court of Appeals for the Fifth Circuit has generally considered the factor of control to be central").  Because both Defendants are "employers" for the purposes of the LHWCA, the Plaintiffs tort actions related to his mental distress injury are thus barred by the LHWCA's exclusivity provision.

Though Plaintiff alludes to possible negligence actions under his general "article 2315" fault cause of action other than that related to "physical or psychological injury," the Plaintiff has not specified what injury might have been sustained.  As it pertains to the Plaintiff's Complaint in its current state, the Court finds that his allegation of "fault" is not sufficiently pled and any amendment thereto would be futile as any claim would likely be subject to the LHWCA exclusivity provision.  As article 2315 is the "single article [that] forms the basis of all tort liability in Louisiana," *Ardoin v. Hartford Acc. & Indem. Co.,* 360 So. 2d 1331, 1334 (La. 1978),

---

[11] *See Kindred v. Blake Int'l Holdings, L.L.C.,* 805 F. Supp. 2d 278, 281 (E.D. La. 2011)(quoting *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 312–13 (5th Cir.1969))( "These factors include the following considerations:(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details of cooperation? (2) Whose work is being performed?(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?(4) Did the employee acquiesce in the new work situation?(5) Did the original employer terminate his relationship with the employee?(6) Who furnished the tools and the place of performance?(7) Was the new employment over a considerable length of time?(8) Who had the right to discharge the employee?(9) Who had the obligation to pay the employee?").

the Plaintiff must necessarily allege a particular degree of fault and correlating elements of a cause of action in order to state a claim that is plausible on its face, in the most basic sense.

Finally, outside of the workers' compensation scheme, however, OCSLA makes the tort law of the adjacent state surrogate federal law and thus applicable to any tort-based cause of action for those offshore injuries. *See* 43 U.S.C. § 1381, *et seq.* Plaintiff's defamation claim thus remains extant but must still meet the 12(b)(6) standard to withstand the Defendants' motions to dismiss.

### D.    Defamation

A cause of action for defamation in Louisiana arises out of a violation of Louisiana Civil Code article 2315. *Fitzgerald v. Tucker,* 98-2313 (La.06/29/99), 737 So.2d 706. To prevail on this claim, the Plaintiff must prove the following four elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139 (citation and internal quotation marks omitted). "If even one of the required elements of the tort is lacking, the cause of action fails." *Costello*, 864 So. 2d at 140 (citations omitted).

"Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule." *Fitzgerald,* 98-2313 at 11, 737 So.2d at 716.   "Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory." *Id.*   "In addition to false, defamatory statements of fact, and statements of opinion made with actual malice which imply false, defamatory facts," a plaintiff may also recover for "for defamation by innuendo or implication,

which occurs when one publishes truthful statements of fact, and those truthful facts carry a false, defamatory implication about another." *Id.* at 717.

Louisiana classifies defamatory words into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning." *Costello*, 864 So. 2d at 140 (citation omitted). "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, even without considering extrinsic facts or surrounding circumstances, are considered defamatory per se." *Id.* "When a plaintiff proves publication of words that are defamatory per se, the elements of falsity and malice (or fault) are presumed, but may be rebutted by the defendant." *Id.* When the words at issue are not defamatory per se, a plaintiff must prove all four elements of the defamation claim. *Id.*

Louisiana courts have determined that, as to fault, the plaintiff must prove "that the defendant, with *actual malice* or *other fault*, published a false statement with defamatory words which caused plaintiff damages." *Costello*, 864 So. 2d at 139-40 (citing *Trentecosta v. Beck,* 96-2388, 10 (La.10/21/97), 703 So.2d 552, 559); *see Cyprien v. Bd. of Sup'rs ex rel. Univ. of Louisiana Sys.,* 2008-1067 (La. 1/21/09), 5 So. 3d 862, 866-67. Finally, "[t]he injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed." *Costello*, 864 So. 2d at 141.

To plead facts sufficient to state a cause of action for defamation under Louisiana law, Louisiana courts do not require a quoted statement but do require the plaintiff provide "with reasonable specificity the defamatory statements allegedly published by the defendant." *Badeaux v. Sw. Computer Bureau, Inc.,* 2005-0612 (La. 3/17/06), 929 So. 2d 1211, 1218 (citing

*Fitzgerald*, 737 So.2d at 713); *see Haygood v. Begue*, No. 13-CV-0335, 2014 WL 1316200, at *6

(W.D. La. Mar. 31, 2014).  In other words, "[i]t is not necessary for a plaintiff to state verbatim

the words on which [the plaintiff] bases his cause of action, but he must allege a state of facts or

condition of things which would show fault under article 2315." *Badeaux,* 929 So. 2d at 1218

The Louisiana courts also require that the plaintiff "name the individual offenders and allege

separate acts of defamation as to each, including specific defamatory statements."  *Id.* at 1218

(citing *Juneau v. Avoyelles Par. Police Jury,* 482 So.2d 1022, 1027 (La.App. 3d Cir.1986)). A

Louisiana appellate court has noted that, under the Louisiana law of defamation,

"[c]ommunications between a previous employer and a prospective employer . . . enjoy a

qualified or conditional privilege. Such a communication is not actionable when made in good

faith." *Butler v. Folger Coffee Co.,* 524 So. 2d 206, 207 n.1 (La. Ct. App. 1988)(citing *Alford v.

Georgia-Pacific Corp.,* 331 So.2d 558, 561 (La.App. 1st Cir.1976), *writ denied* 334 So.2d 427).

     Defendant Wood Group contends that the alleged "failure to acknowledge" the Plaintiff's

status as employee is not a defamatory statement as even misreporting of the Plaintiff's status as

a former employee fails to impute any element of "personal disgrace, dishonesty, or disrepute" in

the form of resume fraud, and, moreover, argues that the Plaintiff's claim lacks elements of the

offense in that Plaintiff fails to identify the specific defamatory words that were published and to

whom they were published. Plaintiff assert that, when Wood Group responded to potential

employers to verify that employee had in fact worked for a prior employer, Wood Group

published and falsely stated that the Plaintiff was not an employee; because the statement

imputes dishonesty or fraud, the Plaintiff asserts that the statement is defamatory per se and the

elements of malice, falsity, and damages are presumed.

Regardless of the words' status as defamatory per se or words susceptible to defamatory meaning, the Plaintiff plead the alleged defamatory statement with "reasonable specificity." Instead, Plaintiff generally alleges that Defendant Wood Group failed to acknowledge the Plaintiff's status as a former employee on more than one occasion. *See* Compl. ¶¶ 35-39.  A "failure to acknowledge," as alleged in the Complaint, connotes inaction as opposed to the affirmative act of making a false statement intended to injure another's reputation; such facts hardly amount to a statement generally and the allegation certainly does not consist of any particular set of defamatory words or specific instances of Defendant's publication of defamatory words.  Without a statement pled with reasonable specificity, the Plaintiff has failed to allege facts as to a critical element of the claim and the claim is not plausible on its face.

Although the Plaintiff requests leave to amend, the Plaintiff offers no additional facts and simply asserts that Wood Group's response to a potential employer indicating that the Plaintiff had not worked for Wood Group would make the Plaintiff appear dishonest and harm his professional reputation. The Court notes that Plaintiff has cited no case where a failure to acknowledge a plaintiff's status as a former employee has been found to be defamatory much less qualify as a statement susceptible of being defamatory. Assuming *arguendo* that Wood Group denied having employed the Plaintiff, such words or lack thereof (if indeed a "statement") would fail to state a claim for defamation that is plausible on its face. It is this Court's opinion that failing to acknowledge or even outright denial of Plaintiff's former employment, even if false, does not constitute a defamatory statement. Such an act (or omission) relating to the Plaintiff's employment history—a fact typically easily rebutted by extrinsic sources—does not convey an element of dishonesty, impugning the Plaintiff's character such that Plaintiff's

professional reputation is irrevocably damaged. In sum, the Court finds that any amendment to this claim would be futile as it would still fail to state a claim under Rule 12(b)(6).

Accordingly,

**IT IS ORDERED** that Defendant W&T Offshore's Motion to Dismiss (R. Doc. 8) and Defendant Wood Group's Motion to Dismiss (R. Doc. 10) are **GRANTED**, and the Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this <u>25th</u> day of <u>        August        </u>, 2015.


_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**